**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-21373-Civ-GAYLES/TORRES

SOCIAL LIFE NETWORK, INC.,

    *Plaintiff*,

v.

PEAK ONE OPPORTUNITY FUND, L.P.,
PEAK ONE INVESTMENTS, LLC,
JASON C. GOLDSTEIN, and
J.H. DARBIE & CO., INC.,

    *Defendants*.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' joint motion to dismiss Plaintiff's second amended complaint. [D.E. 59]. The motion is fully briefed and therefore ripe for disposition. After careful consideration of the parties' arguments, the relevant authority, and for the reasons discussed below, Defendants' motion to dismiss should be **GRANTED in part with prejudice** and **GRANTED in part without prejudice**.[1]

---

[1] The Honorable Darrin P. Gayles referred Defendant's motion to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 53].

1

## I. FACTUAL BACKGROUND

Social Life is a startup company from Denver that licenses its SaaS internet platform to various industries. Peak One Opportunity Fund is a hedge fund based in Miami Beach. Peak One Investments is the general partner of that Fund. Jason Goldstein is the managing member of Peak One Investments. And J.H. Darbie & Co. is the Wall Street brokerage firm that introduced Social Life to the Fund in April 2019 after Social Life expressed its need to connect with potential lenders who could finance its operations.

On April 11, 2019, Social Life and the Fund contracted to provide Social Life with a $75,000.00 loan. In exchange for the loan amount, Social Life provided the Fund with two instruments: (1) a convertible debenture; and (2) a common stock purchase warrant.

The convertible debenture was essentially a promissory note that granted the Fund the right, under certain circumstances, to have the debt repaid in Social Life's common stock instead of cash. The convertible debenture further governed situations in which the Fund could accelerate Social Life's obligation to repay the loan. Notably, the convertible debenture is defined therein as a contract governed by the laws of Nevada.

The warrant, which is similarly governed by Nevada law, provided the Fund the right – but not the obligation – to purchase $300,000.00 worth of Social Life's common stock at a price of $0.20 per share. In certain situations, however, such as Social Life's decision to subsequently issue common stock to a third-party lender at a

price below $0.20 per share, the price per share defined in the warrant could be decreased to match the lower price offered to the third party. And if such a decrease in the share price occurred, the Fund still retained the right to purchase $300,000.00 worth of Social Life's common stock. This adjustment mechanism was expressly designed to prevent the dilution of the Fund's investment in Social Life.

As time went by, the Fund exercised its acceleration rights under the convertible debenture and thereby required Social Life to repay the balance due plus an additional fee. The Fund also exercised its rights under the warrant and acquired $300,000.00 worth of Social Life's common stock at a deeply discounted price per share, resulting in the Fund's acquisition of a remarkable 78,022,119 newly issued shares. Social Life alleges, based upon information and belief, that the Fund then immediately sold its recently acquired stock to third parties, which allowed the Fund to profit by selling its deeply discounted, newly issued shares in the public markets at the then-marginally higher market price. Nothing in the warrant required the Fund to do this. In other words, the warrant granted the Fund the right to acquire shares based upon a pre-arranged mathematical formula, but it did not require the Fund to sell the shares it acquired, or to hold the shares for a minimum amount of time after acquisition, or to acquire any shares at all.

Ultimately, flooding the market with newly issued stock did not have a positive impact on Social Life's share price or its ability to obtain corporate financing. And so, on April 9, 2021, Social Life sued the Fund and thereby sought to rescind the loan agreements and then obtain damages under Florida law. Since then, the complaint

has been amended twice and Defendants have moved to dismiss the operative pleading with prejudice. For the following reasons, this Court finds that Defendants are entitled to almost all the relief they request.

## II. *APPLICABLE PRINCIPLES AND LAW*

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a Rule 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

4

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed a "two-pronged approach" in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotations omitted).

### III. ANALYSIS

Social Life advances six causes of action. First, Social Life alleges that the loan agreements it entered into with the Fund are void because the agreements violate Section 29(b) of the Securities Exchange Act of 1934. Second, Social Life alleges that the loan agreements are void because the agreements violate Section 517.12(1) of the Florida Securities and Investor Protection Act. Third, Social Life seeks damages from Peak One Investments and Goldstein under the Florida Civil Remedies for Criminal Practices Act ("CRCPA"), Fla. Stat. § 772.101, *et seq*. Fourth, Social Life alleges a CRCPA claim against Darbie as well. Fifth, Social Life alleges unjust enrichment under Florida law against all Defendants. And sixth, Social Life brings a cause of action under Florida law for constructive trust against the Fund, Peak One Investments, and Goldstein.

Defendants advance a panoply of arguments regarding why, under Rule 12(b)(6), Social Life's claims fail to state a claim upon which relief can be granted.

Some of these arguments are better suited for summary judgment, but enough hit the mark and therefore persuade the Court that dismissal is required. Our discussion is therefore limited to Defendants' dispositive theories.

### A. *Count I is time-barred and therefore recission is not an available remedy.*

As amended, Section 29(b) of the Exchange Act provides that every contract "made in violation of any provision of this chapter or of any rule or regulation thereunder . . . *shall be void* . . . as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract." 15 U.S.C. § 78cc(b) (emphasis added). Like the ubiquitous Section 10(b) lawsuit, Social Life maintains that Section 29(b) provides it with an implied cause of action for recission of the loan agreements.

To flesh out its theory, Social Life directs the Court to Section 15(a) of the Exchange Act, which requires a "dealer" of non-exempted securities to register in accordance with Section 15(b). 15 U.S.C. § 78o(a). Because the Fund is a "dealer" under the Exchange Act, it has an obligation to register in accordance with Section 15(b). But the Fund is not now, and was not at the time of contracting, so registered.[2] Social Life therefore submits that the Fund violated Section 15(a) when it entered

---

[2] To be clear, the Fund disputes its status as a "dealer" under the Exchange Act and therefore disputes its obligation to register under Section 15(b). Nevertheless, on a motion to dismiss, the Court is bound to accept Social Life's factual allegation to the contrary. Notably, the Fund concedes that it was not registered in accordance with Section 15(b) on April 11, 2019, and it points out that (1) Social Life does not allege that the Fund ever represented itself as a registered dealer and (2) Social Life could have very easily verified the Fund's registration status by querying an online database.

6

into the loan agreements and, pursuant to Section 29(b), the loan agreements are void.

So far so good, but Social Life's theory for recission under Section 29(b) runs out of steam when the Court considers that Social Life waited just under two years to file its lawsuit against the Fund because, as discussed below, this cause of action is time-barred.

The Supreme Court has established that, where an implied cause of action exists under the Exchange Act, an implied statute of limitations generally governs the time within which a plaintiff must bring its implied cause of action. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991) ("It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand.").

In *Lampf*, the plaintiffs filed a lawsuit based on a cause of action implied by Section 10(b) of the Exchange Act, which prohibits fraud in conjunction with the sale of securities. *Id*. at 352-54. But because a Section 10(b) claim is implied by the text of the statute instead of being expressly provided for, Congress did not enact a statute of limitations to govern Section 10(b) claims; accordingly, absent evidence that Congress intended for there to be no limitations period applicable to Section 10(b) claims, the Supreme Court analyzed whether the applicable statute of limitations should be borrowed from state or federal law. *See id*. at 358-59. After establishing a framework for analyzing whether courts should choose state statutes of limitation

7

over their federal counterparts (and vice versa), the Supreme Court held that a private cause of action implied by the Exchange Act was subject to the same limitations period as other causes of action that were expressly provided for in the Exchange Act. *See id.* at 359. As the opinion explained:

> We conclude that where, as here, the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period. We can imagine no clearer indication of how Congress would have balanced the policy considerations implicit in any limitations provision than the balance struck by the same Congress in limiting similar and related protections. When the statute of origin contains comparable express remedial provisions, the inquiry usually should be at an end. Only where no analogous counterpart is available should a court then proceed to apply state-borrowing principles.

*Id.* (internal citations omitted). The Supreme Court therefore determined that a Section 10(b) claim was subject to the one-and-three-year limitations period associated with causes of action that were expressly provided for by the Exchange Act, which is to say that a Section 10(b) claim must be filed within one year after the discovery of the facts constituting the violation or, absent such discovery, within three years of the violation – the outer limit for these types of claims. *Id.* at 361-63.

By amending 28 U.S.C. § 1658 in 2002, Congress enlarged the limitations periods applicable to securities-fraud-based claims from a one-and-three-year structure to a two-and-five-year structure. *Merck & Co. v. Reynolds*, 5598 U.S. 633, 647 (2010). But that amendment did not vitiate the borrowing framework articulated by *Lampf*, which courts across the country have applied to constrain Section 29(b) claims premised on Section 15(a) violations. *See, e.g., DarkPulse, Inc. v. FirstFire Global Opportunities Fund, LLC,* No. 21-cv-11222, D.E. 41 at 15-18 (S.D.N.Y. Jan.

8

17, 2023) (discussing the applicable one-and-three-year statute of limitations); *Social Life Network, Inc. v. LGH Investments, LLC*, No. 21-cv-767, 2022 WL 2718615, at *2 (S.D. Cal. July 13, 2022) ("It is appropriate to use the 1-year after discovery and 3-year after violation statute of limitations set forth in the Exchange Act."); *Anderson v. Binance*, No. 20-cv-2803, 2022 WL 976824, at *3 (S.D.N.Y. Mar. 31, 2022) (discussing Section 29(b) claims premised on an unregistered exchange violation); *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016) ("There is a one-year statute of limitations for any implied cause of action under Section 29(b) of the Exchange Act. The one-year statute of limitations runs from the time when an individual 'could have, through the exercise of reasonable diligence, discovered the fraud' at issue.") (internal citations omitted); *Celsion Corp. v. Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942, 946-48 (N.D. Ill. 2001) ("Celsion had one year after the discovery of the facts constituting the violation but no more than three years after such violation to bring its claim under section 15(a).").

Because Congress and the Eleventh Circuit have not defined the limitations period for Section 29(b) claims that are premised on Section 15(a) violations, the Court has an obligation to "look first" to the Exchange Act and consider whether this law provides an express statute of limitations that aligns with the interests that Section 29(b) and Section 15(a) were designed to protect. *See Lampf*, 501 U.S. at 358-59. But the Court need not look very far to find an express statute of limitations because, as the Supreme Court noted in *Lampf*, Section 29(b) actually includes one. *See id.* at 354-55. Section 29(b) provides that, where an action for recission is

9

premised on violations of Section 15(c)(1) or Section 15(c)(2), which both concern violations relating to fraud, the lawsuit must be commenced within "one year after the discovery that such sale or purchase involves such violation and within three years after such violation." 15 U.S.C. § 78cc(b); *see* 15 U.S.C. §§ 78o(c)(1) and (2).

It is therefore worth noting at this juncture that, unlike Sections 10(b), 15(c)(1), or 15(c)(2), Section 15(a) is not one of the Exchange Act's express antifraud provisions. Scienter, for example, is not required to prove a Section 15(a) violation. But as the Northern District of Illinois explained when it determined the applicable statute of limitations for Section 29(b) claims premised on Section 15(a) violations, the congressional purpose behind the enactment of Section 15(a) was the same as the purpose behind the other sections of the Exchange Act. *Celsion*, 157 F. Supp. 2d at 947. The Exchange Act was "intended to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter markets, and to impose regular reporting requirements on companies whose stock is listed on national securities exchanges." *Id.* (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976)). "The requirement that brokers and dealers register is of the utmost importance in effecting the purposes of the Act" because it "enables the SEC (and private citizens, through the implied right of action) to exercise discipline over those who may engage in the securities business" and are therefore obligated to comply with the standards imposed by our securities laws. *Id.* (citing *Regional Props., Inc. v. Financial and Real Estate Consulting Co.*, 678 F.2d 552, 562 (5th Cir. 1982)).

Much like our sister courts in New York, Illinois, and California, we conclude that, with respect to Section 29(b) claims premised on Section 15(a) violations, it is appropriate to borrow the one-and-three-year statute of limitations framework from Section 29(b) claims that are premised on Section 15(c)(1) and Section 15(c)(2) violations. Although Section 15(a) is not an antifraud provision, its registration requirement is designed to ensure compliance with our securities laws and thereby protect investors from the unfair manipulation of stock prices. The Exchange Act's antifraud provisions serve the same goals. And because Section 29(b) narrowly contemplates the recission of contracts, we find that its one-and-three-year framework better reflects Congress' balancing of the policy considerations present in this case as opposed to the two-and-five-year framework provided by 28 U.S.C. § 1658, which encompasses actions capable of seeking remedies beyond rescission.

Having determined the applicable limitations period, we now turn to the question of whether Social Life's Section 29(b) claim was timely. The answer is no based on the four corners of the operative complaint.

Social Life alleges that it entered into the loan agreements on April 11, 2019. At the time of contracting, Social Life could have discovered with minimal diligence that the Fund was not registered in accordance with Section 15(a) because, as Social Life notes in its second amended complaint, any dealer's registration can be quickly located on the Financial Industry Regulatory Authority's website: *www.brokercheck.finra.org*. Given the ease with which Social Life could have ascertained the Fund's registration status, it could have discovered with reasonable

11


diligence the facts giving rise to the Fund's Section 15(a) violation on April 11, 2019. Therefore, applying the one-year statute of limitations to the facts alleged by Social Life, this lawsuit must have commenced by April 11, 2020. *See Merck & Co.*, 559 U.S. at 646-48 (holding that "discovery" in the context of a statute of limitations refers to what a plaintiff actually knew as well as what a plaintiff would have known if the plaintiff exercised reasonable diligence). As a result, the limitations period commenced well before the three-year maximum period included in the statute. *See, e.g., Celsion,* 157 F. Supp. 2d at 948 ("Celsion had one year after the discovery of the facts constituting the violation but no more than three years after such violation to bring its claim under section 15(a).").

This suit, however, was not filed until April 9, 2021. [D.E. 1]. Because Social Life commenced this lawsuit long after April 11, 2020, its Section 29(b) claim is time-barred as a matter of law and on the face of the complaint.[3]

---

[3]  Undoubtedly a "Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Brotherhood of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 (11th Cir. 2005) (citations omitted). Such a finding may not be commonplace, but it regularly occurs in cases like this one where there can be no reasonable dispute as to when the claim could have accrued. *Id.* at 1196-97 (affirming dismissal of complaint on limitations grounds where no authority found for applying different rule of accrual under the statute and no basis for equitable estoppel existed). *See also Mesocap Ind. Ltd. v. Torm Lines,* 194 F.3d 1342, 1345 (11th Cir. 1999) (affirming dismissal of complaint on limitations grounds where straightforward application of one-year statutory limitations period rendered claim untimely); *My24HourNews.com, Inc. v. AT&T Corp.,* 791 F. App'x 788, 799 (11th Cir. 2019) (affirming dismissal of fraud claims where minimal diligence of plaintiff in reading contractual documents placed it on notice of the alleged misrepresentation; dismissal appropriate on limitations grounds where accrual clear from face of the complaint); *Scordato v. United States,*

Faced with this problem, Plaintiff makes a half-hearted attempt to insulate its stale claim with equitable tolling principles or the continuing violation doctrine. But those theories have zero application here. For instance, in *Lampf,* the Supreme Court expressly said that equitable tolling is inconsistent with the one-and-three-year structure because Congress intended the three-year limit to serve as an outer boundary. 501 U.S. at 363. Given that this is the case, equitable tolling has no relevance to the running of an admittedly accrued one-year discovery period.

Moreover, Social Life's invocation of the continuing violation doctrine is misplaced because it ignores the fact that, every time the Fund sold its shares in Social Life to third parties, those sales were effectuated pursuant to new contracts that were necessarily distinct from the loan agreements that Social Life now seeks to rescind. So, even assuming that the Fund violated Section 15(a) every time it sold its shares in Social Life, that has no bearing on the Section 15(a) violation that allegedly occurred in conjunction with the loan agreements at issue in this case because those loan agreements did not require the Fund to sell any of its shares. This argument is therefore rejected.

Accordingly, Count I should be DISMISSED with prejudice.

---

489 F. App'x 385, 386 (11th Cir. 2012) (affirming dismissal of untimely tort claim when undisputed when plaintiff knew of basis to claim misdiagnosis).

### B. *Count II fails to state a claim and therefore recission is not an available remedy.*

To get past its stale federal claim designed to void the loan agreements, Social Life next turns to Florida state law, specifically Section 517.12(1) of the Florida Securities and Investor Protection Act. The relevant provision cited is:

> No dealer, associated person, or issuer of securities shall *sell* or *offer for sale* any securities in or from offices in this state, or sell securities to persons in this state from offices outside this state, by mail or otherwise, unless the person has been registered with the office pursuant to the provisions of this section.

Fla. Stat. § 517.12(1) (emphasis added). Based on the foregoing language, Social Life alleges that an implied cause of action for recission exists under Florida law. But Social Life's state-law recission claim is dead on arrival because of the plain language of the statute on which it relies.

Section 517.12(1) prohibits unregistered dealers from selling or offering to sell certain securities. But it does not prohibit unregistered dealers from *buying* such securities. And based upon Social Life's allegations, the Fund is clearly the buyer with respect to the loan agreements because both the convertible debenture and the warrant granted the Fund the right to buy shares of Social Life's common stock. In this scenario, the Fund is the investor and thereby the party who is protected by this provision of the Florida Securities and Investor Protection Act.

Because Social Life is the seller, it fails to state a claim under Section 517.12(1). *See Weiss v. Altholtz*, No. 10-cv-02609, 2011 WL 4538459, at *6 (E.D. Ill. Sept. 29, 2011) (interpreting Florida law) ("Because [plaintiff] was a *seller*, she cannot prevail."). And because nothing is going to change the fact that, with respect to the

loan agreements that Social Life seeks to rescind, Social Life was the seller of its securities and the Fund was the buyer, amendment would be futile. Accordingly, Count II should be DISMISSED with prejudice. *See In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1347 (11th Cir. 2017) (holding that dismissal with prejudice is appropriate when amendment would be futile); *Chiron Recovery Center, LLC v. United Healthcare Services, Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020) ("A court may also dismiss a case with prejudice when amendment would be futile.") (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (1th Cir. 1999)).

### C. *Because recission is not an available remedy under Counts I & II, the Nevada choice-of-law provision applies and therefore the remaining claims, which are brought pursuant to Florida law, should be dismissed.*

Based on the allegations in the second amended complaint, Social Life is not seeking the remedy of rescission through any of its remaining claims. And because the Court believes that Counts I & II should be dismissed with prejudice, the remedy of recission is effectively off the table. Therefore, the balance of Social Life's claims, which are brought pursuant to Florida law, are barred pursuant to the Nevada choice-of-law provisions in the convertible debenture and the warrant. *See, e.g., Xena Investments, Ltd. v. Magnum Fund Mgmt., Ltd.*, 726 F.3d 1278, 1284-86 (11th Cir. 2013) (discussing the presumptive validity of contractual choice-of-law provisions).

We have no basis to conclude that the Nevada choice-of-law provision is unenforceable because it was induced by fraud or overreaching, or because it would effectively preclude Social Life from enjoying its day in court, or because the fundamental unfairness of the chosen law would deprive Social Life of a remedy, or

15

because enforcement of this provision would contravene a strong public policy. *See id.* (discussing how courts in the Eleventh Circuit may find choice-of-law provisions unreasonable and therefore unenforceable). Social Life is, after all, incorporated in Nevada, and its arguments regarding why the Nevada choice-of-law provision is unenforceable are limited to the loan agreement being void *ab initio* pursuant to the Exchange Act and the Florida Securities and Investor Protection Act. Social Life's remaining Florida-law claims should therefore DISMISSED for failure to state a claim upon which relief can be granted. But because Social Life can theoretically amend its complaint to rescind the loan agreement under some cause of action premised on Nevada law, without relying on Section 29(b) of the Exchange Act or Section 517.12(1) of the Florida Securities and Investor Protection Act, these claims should be DISMISSED without prejudice in an abundance of caution.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that:

A. Counts I and II should be **DISMISSED with prejudice**.

B. Counts III, IV, V, and VI should be **DISMISSED without prejudice**.

C. Any amended complaint should be due within fourteen (14) days from the date the District Judge adopts this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual

or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 13th day of February, 2023.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge