**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-21373-CV-GAYLES/TORRES

SOCIAL LIFE NETWORK, INC.,

 *Plaintiff,*

v.

PEAK ONE OPPORTUNITY FUND,
L.P., *et. al.,*

 *Defendants.*

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTION FOR FEES AND EXPENSES**

 This matter is before the Court on Defendants' motion for attorneys' fees and expenses. [D.E. 88]. Plaintiff responded, [D.E. 92], and Defendants replied, [D.E. 93]. Therefore, the motion is now ripe for disposition. After careful consideration of the briefing, exhibits, relevant authorities, and for the reasons discussed below, Defendants' motion for fees and expenses should be **GRANTED in part** and **DENIED in part**. [1]

---

[1] On March 3, 2022, the Honorable Darrin P. Gayles referred all pre-trial, non-dispositive matters to the undersigned Magistrate Judge for disposition. [D.E. 53].

## I.   BACKGROUND

This case involved a dispute between a startup company (Social Life) and a lender (Peak One Opportunity Fund), whereby Social Life sought to rescind the loan and obtain damages against Peak One.  The dispute arose because Peak One exercised its rights under the loan to obtain $300,000 worth of Social Life's common stock at a discounted price and immediately sold its recently acquired stock to third parties.  This flooding of shares into the market negatively impacted Social Life's stock price and ability to obtain corporate financing, thus triggering the lawsuit. Peak One Opportunity Fund, L.P., Peak Once Investments, LLC, Jason C. Goldstein, and J.H. Darbie & Co., Inc. (collectively, "Defendants") then filed a motion to dismiss all of Social Life's claims, which was granted with prejudice.  [D.E. 78].  Accordingly, final judgment was entered against Social Life ("Plaintiff") on April 12, 2023.  [D.E. 81].  Defendants now move to recover their expenses as well as their reasonable attorneys' fees.  Plaintiff does not dispute Defendants' general entitlement to fees and expenses; however, Plaintiff requests that this Court defer a ruling on the motion pending Plaintiff's appeal to the Eleventh Circuit.  [D.E. 92].  Alternatively, Plaintiff requests that this Court deny Defendants' motion in part because the Defendants' requested rates are unreasonably high, and Defendants are not entitled to their legal research expenses.  We now resolve the parties' dispute.

## II.    APPLICABLE PRINCIPLES AND LAW

### A.    *When Attorneys' Fees are Awarded*

Generally, under the "American Rule" in the United States, the prevailing party in litigation may not collect its attorney's fees from the losing party.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001).  In other words, each party, including the prevailing party, must bear its own attorney's fees.  The rationale of the "American Rule" is that "since litigation is at best uncertain, one should not be penalized for merely defending or prosecuting a lawsuit . . . ." *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984).  However, there are certain exceptions to the American Rule that allow a prevailing party to recover its fees.  *See Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) (stating that there is an exception to the American Rule when an award of attorney's fees is authorized either by statute or contract); *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1329 (11th Cir. 1998) ("Florida conforms to the 'American Rule' under which attorneys' fees are awarded only when permitted by statute or contract.").  These exceptions include: "(1) when a statute grants courts the authority to direct the losing party to pay attorney's fees; (2) when the parties agree in a contract that one party will pay attorney's fees; and (3) when a court orders one party to pay attorney's fees for acting in bad faith." *In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019).

**B.**      <u>*Discretion to Defer Ruling on the Motion for Attorneys' Fees*</u>

Filing a notice of appeal generally divests a district court of jurisdiction on any matters involved in the appeal.  *See Shivers v. Hill*, 205 F. App'x 788, 789 (11th Cir. 2006).  However, the district court has discretion to entertain motions for attorney's fees and expenses, defer ruling on the motions, or deny the motions without prejudice to refile after the appeal.  *See United States for use & benefit of GLF Constr. Corp. v. FEDCON Joint Venture*, 2021 WL 1186839, at *1 (M.D. Fla. Mar. 30, 2021), *reconsideration denied*, 2021 WL 2109074 (M.D. Fla. May 25, 2021); *see also* Fed. R. Civ. P. 54(d)(2) advisory committee's note ("If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice . . . .").  Courts that have exercised discretion in favor of deferring the fees motion have cited concerns with the following: having to repeat the attorney's fees and costs procedure following appeal, the desire to avoid piecemeal adjudication, the unlikelihood that resolution would assist the Eleventh Circuit, and the fact that attorney's fees and costs issues are often resolved during appellate mediation.  *United States for use & benefit of GLF Constr. Corp.*, 2021 WL 1186839 at *2 ("Courts have cited concerns such as having to repeat the attorney's fees and costs procedure following appeal, the desire to avoid piecemeal adjudication, that resolution is unlikely to assist the Eleventh Circuit, and that attorney's fees and costs issues are often resolved during appellate mediation."); *see also Truesdell v. Thomas*, 2016 WL 7049252, at *2 (M.D. Fla. Dec. 5, 2016); *Britt Green Trucking, Inc. v. FedEx Nat'l LTL, Inc.*, 2012 WL 12951321, at *1 (M.D. Fla. Jan. 26, 2012).

However, the court's regular practice is not to stay matters collateral to a final judgment, principally involving fees and costs issues. *King Cole Condo. Ass'n v. QBE Ins. Corp.*, 2010 WL 3212091, at *1 (S.D. Fla. Aug. 12, 2010) (Torres, Mag. J.); *see also Hodges v. Sch. Bd. of Orange Cty.*, 2013 WL 12155455, at *2 (M.D. Fla. Mar. 18, 2013) ("[C]ourts routinely resolve pending motions for fees even if an appeal is filed.") (alteration added).  District courts often decline to stay a motion for attorney's fees because the "Court of Appeals may want to consider [the fees issue] in conjunction with an appeal of the ultimate judgment rendered in the case." *Slip N' Slide Records, Inc. v. TVT Records, LLC*, 2007 WL 1098751, at *3 (S.D. Fla. Apr. 8, 2008) (Torres, Mag. J.) (alteration added); *see also Moore v. N. Am. Sports, Inc.*, 2009 WL 10674373, at *1 (N.D. Fla. Oct. 6, 2009) ("Efficiency is best served by determining the amount of fees at this time so Plaintiff may consolidate the issue of attorneys fees with [its] current pending appeal before the Eleventh Circuit.") (alteration added).

### III.   ANALYSIS

Defendants seek to recover a total of $237,224 in attorneys' fees and expenses.[2] This sum compromises the following amounts: $222,224 in attorneys' fees stemming from the legal work performed on the merits by Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), and $15,000 in online legal-research expenses.

---

[2]   Defendants also seek to recover the attorneys' fees and expenses incurred in drafting their motion for attorneys' fees and expenses.  However, Defendants have not provided any time records relating to time spent on that motion, and thus those fees and expenses will not be awarded.  *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (finding that the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for *each* activity) (emphasis added).

### A.   _Entitlement to Fees_

The first question is whether the Defendants are entitled to fees.  To reiterate, Plaintiff does not dispute the Defendants' entitlement to fees.  The agreement between the parties provides that "[t]he prevailing party shall be entitled to recover from the other party its reasonable attorney's fees and costs." [D.E. 54-4].  The Defendants were clearly the prevailing party as the Court granted Defendants' motion to dismiss and dismissed all of Plaintiff's claims with prejudice.  [D.E. 78]. Furthermore, the parties' agreement is governed by Nevada law, and under Nevada law, "attorneys' fees are available by way of contract." _United States for Use & Benefit of Wells Cargo, Inc. v. Alpha Energy & Elec., Inc._, 2023 WL 2570424, at *5 (D. Nev. Mar. 20, 2023).  Therefore, this Court finds that Defendants are entitled to their reasonable attorneys' fees.[3]

### B.   _Whether to Defer Ruling on the Motion_

Next, Plaintiff asks that this Court defer a ruling on the motion pending its appeal to the Eleventh Circuit.  Plaintiff argues that a deferral of a decision on the motion pending resolution of the appeal would promote judicial economy and conserve the Court's limited resources.  _See Hipp v. Liberty Nat'l Life Ins. Co._, 65 F. Supp. 2d 1314, 1323 (M.D. Fla. 1999), _aff'd in part, rev'd on other grounds in part_, 252 F.3d 1208 (11th Cir. 2001).

---

[3]    Because this Court finds that Defendants are entitled to their attorneys' fees under the agreement, this Court does not address Defendants' claim that they are independently entitled to recover attorneys' fees under the Florida RICO statute.

Defendants counter that efficiency would be best served not by a delay, but by determining the amount of fees now so that the Eleventh Circuit may consider the fees issue in conjunction with the underlying appeal. *See Moore*, 2009 WL 10674373 at *1.

Here, the Court agrees with the Defendants and exercises its discretion in favor of deciding the motion now. The Court finds no reason to divert from its regular practice of resolving the pending motion for fees and expenses now instead of staying the motion until resolution of the appeal. Further, given that notice of appeal was filed in April 2023 [D.E. 80], a decision on this motion will give Plaintiff the chance to consolidate this issue with its underlying appeal. Therefore, this Court declines Plaintiff's request to defer a ruling on the motion and will now address the parties' dispute over the amount due.[4]

**C.**     ***The Lodestar Method of Determining Reasonable Fees***

To determine an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable'

---

[4] An additional consideration that the Court employs in its analysis of a request for deferral is how close or arguable the legal issue on appeal is. If there is a material possibility of reversal, or if the issue is truly one of first impression, deferral may be preferred to conserve resources. This case was adjudicated on a statute of limitations argument that was strongly supported in relevant caselaw, and Plaintiff has little to offer the Court of Appeals other than its self-serving view should prevail over these decisions. A compelling case for deferral thus has not been made.

fee . . . .").[5]  This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id*.

The lodestar method requires that the Court determine an attorney's reasonable hourly rate and then multiply that rate by the number of hours reasonably expended. *See, e.g.*, *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1299; *Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, 2022 WL 3568042, at *4 (S.D. Fla. July 19, 2022).  Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302.  Therefore, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id*. at 1304 (citation omitted).

In awarding attorneys' fees, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).  An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit.  *See Norman*, 836 F.2d at 1299-1302.   District courts, however,

---

[5]    The Nevada Supreme Court also recognized the lodestar method as a way for the court to rationally calculate the reasonable amount of fees due.  *See Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549 (Nev. 2005).

have considerable discretion in determining the amount of a fee award so long as the award is reasonable and falls within the Eleventh Circuit's parameters. *See Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("The *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours."); *Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1493 (11th Cir. 1994) ("We reemphasize that the district court has discretion in determining the amount of a fee award.  This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Hensley*, 461 U.S. at 437)).

### D.   *The Reasonable Hourly Rate*

The first step is to consider the reasonable hourly rate.  This rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299).  The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 437 (internal quotation marks and citation omitted).  The relevant legal community here is South Florida.

The court in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), set forth several factors that may be considered in calculating the prevailing market rate.[6]  The movant is required to submit to the Court satisfactory

---

[6]     The 12 *Johnson* factors are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;

evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the fee applicant bears the burden "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

Here, Defendants hired five excellent lawyers from Gibson Dunn to work on the merits of the case. The lawyers received additional support on the case from four paralegals. The requested rates (which are discounted from the rates actually billed) are as follows: (1) Helgi Walker (Partner) at $950/hour; (2) Barry Goldsmith (Partner)

---

(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson,* 488 F.2d at 717-19.

at $950/hour; (3) M. Jonathan Seibald (Senior Associate) at $705/hour; (4) Brian Richman (Senior Associate) at $695/hour; (5) Andri Shi (Associate) at $350/hour; (6) Angel Arias (Paralegal) at $175/hour; (7) Ariel Santamaria (Paralegal) at $175/hour; (8) Robyn DeLeo (Paralegal) at $175/hour; and (9) Samuel Roeder (Paralegal) at $175/hour.

Defendants cite to *CITGO Petroleum Corp. v. Petroleum Logistics Serv. USA, Inc.*, 2022 WL 17718802, at *4-5 (S.D. Fla. Nov. 30, 2022), *report and recommendation adopted*, 2022 WL 17716483 (S.D. Fla. Dec. 15, 2022), to support the reasonableness of their requested amounts.  In *CITGO Petroleum Corp.*, Judge Reid exercised her discretion to approve rates for two Willkie Farr partners of $850 per hour and $825 per hour; approved rates of $500 per hour and $700 per hour for a Jones Day associate and a Willkie Farr associate, respectively; approved a rate of $300 per hour for a junior Willkie Farr associate; and approved a rate of $175 per hour for an experienced Jones Day paralegal.  *Id.*  Defendants conclude that this case and those it relied upon are proof of the current market rates that support the requested rates in this case.

Plaintiff counters that Defendants' requested attorney rates are unreasonably high, especially given the relevant legal market of South Florida.[7]  Plaintiff also argues that nothing compelled the Defendants to hire out-of-state Gibson Dunn counsel because "South Florida is not lacking in attorneys with the skill and expertise possessed by Defendants' counsel."  [D.E. 92].  *See ACLU*, 168 F.3d at 437 ("If a fee

---

[7]    Plaintiff does not contest Defendants' requested paralegal amount of $175 per hour, which is reasonable in any event.  *See CITGO Petroleum Corp.*, 2022 WL 17718802, at *5 (awarding $175 per hour for a paralegal).

applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims.").

We will turn first to the requested rates for partners Mr. Goldsmith and Ms. Walker.  Given Mr. Goldsmith and Ms. Walker's experience and high regard in their respective fields, this Court has no trouble understanding why they charge over $1,500 per hour for their services.  However, "in awarding fees to a prevailing party, this Court has long recognized that it cannot force the loser to pay for the luxury of unusually well-qualified counsel when the standard the Court must apply is designed to ensure nothing more than competent legal representation."  *Schultz v. Royal Caribbean Cruises, Ltd.*, No. 18-24023-CIV, Torres, Mag. J, [D.E. 216]; *see also Hermosilla v. Coca-Cola Co.*, 2011 WL 9364952, at *10 (S.D. Fla. July 15, 2011) (comparing attorneys to either a Ferrari, a BMW, or a Ford Fusion and finding that a successful fee applicant can only recover the cost of the Ford Fusion because "[i]t is quite reliable, consistent, and effective for the task at hand, and will not break the bank.").

Moreover, Defendants have not shown that there was a shortage of South Florida securities lawyers and RICO litigators who were willing and able to take their case.  Therefore, this Court finds that a balance must be struck between the types of rates commanded by premium lawyers in outside markets versus the rates that have been approved for securities and RICO litigation in this district.  *See Rogers v. Nacchio*, 2007 WL 1064314, at *7 (S.D. Fla. Apr. 6, 2007) ("In the Southern District

of Florida, rates for complex securities and RICO litigation range from $300 to $500 per hour for partners . . . ."); *Deitchman v. Bear, Stearns Sec. Corp.*, 2008 WL 11332031, at *4 (S.D. Fla. June 30, 2008) (approving a rate of up to $525 per hour for a securities lawyer), *report and recommendation adopted*, 2008 WL 11332032 (S.D. Fla. Aug. 7, 2008).

We acknowledge that some of our earlier cases awarded only up to $500 per hour for experienced partners, even in complicated cases.  In *Hermosilla,* for instance, a heavily litigated copyright case yielded a blended partner hourly rate (for distinguished large firm lawyers) of $425.00.  2011 WL 9364952, at *12.  In that case, the rates requested ranged from $680 to $440, which range the Court found to be extraordinary and non-compensable in this District.  That range looks eminently reasonable, however, when compared to the range of rates requested here for partner level work of $950 to $700.  But as Defendants point out, more recent cases illustrate that the range of hourly rates in our market has increased dramatically from a blended hourly rate of only $425.00.

Admittedly, our decision in *Hermosilla* (and others cited therein) is a dozen years old. Times have certainly changed since 2011 in terms of the Miami legal market.  It would be naïve to cling to our old finding of what a maximum reasonable hourly rate was then given the number of large market firms that have relocated to Miami, the global increase in legal professionals in the market, and the amount of litigation that is filed in our District.   Additionally, apart from those market

considerations, simple principles of inflation require a readjustment of what we determined to be reasonable in 2011.

That said, we fully adopt and incorporate the legal analysis set forth in detail in *Hermosilla* as to why a reasonable hourly rate for a fee award is *not* the same as a standard market rate for premium legal services. The Court's task in a fee petition is not simply to award what a local client could be willing to pay for a given superstar lawyer. Our task is more limited: the "prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." 2011 WL 9364952, at *9 (quoting *ACLU of Georgia,* 168 F.3d at 437).

After adjusting for inflation and considering the similarities between Mr. Goldsmith and other more recent cases, like the most experienced Willkie Farr partner in *CITGO Petroleum Corp.* (both are litigation partners with roughly thirty-five years of experience), this Court finds a rate of $700 per hour to be reasonable for high level partner work like Mr. Walker and Mr. Goldsmith in this District. This is the highest possible rate that we find could be awarded for "reasonable expertise" in our community (even though we acknowledge that quite excellent lawyers could be retained at even lower rates). Lower rates would be appropriate for less complex cases. So, a standard FLSA case, for instance, could still command only $400.00. But you are not likely going to find a lawyer in our market who could comfortably handle a securities fraud or RICO case at that rate. Taking into account all the *Johnson* factors that favor a higher rate in this case, a range of $500 to $700 is more likely

14

than not the appropriate one for this type of case.  So, given the expertise of these particular lawyers (who include a former Supreme Court clerk that can likely command three times as much in certain cases), we will award the rate at the higher end of that range for this case.

As for the associate rates requested in the application, we first note that the requested rate for M. Jonathan Seibald should be awarded in part because Plaintiff did not object to the requested hourly rate for Mr. Seibald in its pre-motion conference with Defendants.  [D.E. 94-1].  Therefore, Plaintiff waived any challenge by not specifically objecting to Mr. Seibald's hourly rate, as per Local Rule 7.3(b).  *See Taverna Imports, Inc. v. A&M Wine & Spirits, Inc.*, 2019 WL 12446711, at *1-2, *12 n.9 (S.D. Fla. Oct. 2, 2019) ("Failure to comply with Local Rule 7.3(b) results in a waiver to any objections to the fee request."); S.D. Fla. L.R. 7.3(b) ("The respondent shall describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority.").

Notwithstanding Plaintiff's waiver of objection to Mr. Seibald's hourly rate, this Court also finds the requested rate for Mr. Seibald to be arguably reasonable.  In *CITGO Petroleum Corp.*, the court awarded $700 to a litigation associate who was a 2013 Harvard Law School graduate.  2022 WL 17718802 at *5.  Mr. Seibald is also a litigation associate who graduated from Harvard Law School, but Mr. Seibald has 15 years of experience.  [D.E. 88].  He is likely doing partner level work and handled much of the leg work in the case.  So given Mr. Seibald's increased experience relative

to the associate in *CITGO Petroleum Corp.*, we will treat him as a de facto partner for purposes of this application and grant him an hourly rate of $700 per hour. This rate is reasonable for Mr. Seibald, especially where the rate was unchallenged in the first place.

A more traditional senior associate, Mr. Richman (2016 law school graduate), is also seeking the same type of rate at $695.00 per hour. The work of a seven-year associate in this market, however, does not require a partner level rate. Instead, the high end for an associate in complex litigation is likely now at $500.00 per hour. Given his superlative background and experience (Yale law and former appellate court clerk), his work should be compensated at the higher end of the associate range (which in our market is now likely $250 to $500.00 per hour).

With respect to Mr. Shi, Plaintiff's argument that Mr. Shi was not barred during the underlying lawsuit is meritless because Mr. Shi was barred in Virginia in 2020 [D.E. 93], and Plaintiff filed its lawsuit in April 2021. [D.E. 1]. Therefore, when considering that the junior Willkie Farr associate (2021 law school graduate) received a rate of $300 per hour, this Court finds that Mr. Shi (barred in 2020) is entitled to the same reasonable rate of $300 per hour.

In sum, the Court adopts the following rates for Defendants' counsel and the paralegals:

Mr. Goldsmith:          $700.00/hour;

Ms. Walker:             $700.00/hour;

Mr. Seibald:            $700.00/hour;

Mr. Richman:              $500.00/hour;

Mr. Shi:                  $300.00/hour;

Mr. Arias:                $175.00/hour;

Mr. Santamaria:           $175.00/hour;

Ms. DeLeo:                $175.00/hour; and

Mr. Roeder:               $175.00/hour.

This Court finds the foregoing adjusted rates to be reasonable in the local legal market, in light of the complex nature of the case, the excellent results achieved for the Defendants, the reputation of the lawyers in the case, and the similarity of these rates compared to the rates awarded in similar cases involving complex litigation and securities regulation.  Again, willing sophisticated legal buyers may very well be willing to pay much higher rates for these individuals' work, but Plaintiff here never entered into that bargain.  It is responsible only for a rate that represents the "least amount necessary to litigate the case effectively." *Hermosilla,* 2011 WL 9364952, at *11 (quotation omitted).

### E. *The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended.  The award must not include hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel.  *ACLU*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).  The fee applicant bears the burden of

17

establishing that the time for which compensation is sought was reasonably expended on the litigation and must supply the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate. *Id.* at 427, 435. If the fee applicant fails to meet this burden, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* at 428 (alterations added) (internal quotations omitted). As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303. Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id. See also Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) ("Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances.").

Defendants' counsel spent a total of 431.6 hours litigating this case but are only requesting compensation for 363.9 hours. Our review of the time records indicates that this sum is not obviously and convincingly excessive, and thus a sweeping, across-the-board reduction is not warranted here.[8] However, Mr. Richman

---

[8]     In calculating the reasonable number of compensable hours under the lodestar method, the Court can conduct either an hour-by-hour analysis or an across-the-board reduction. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable. *See Roy v. Bd. of Cnty. Comm'rs, Walton Cnty., Fla.*, 2012 WL 8013976, at *4 (N.D. Fla. Nov. 1, 2012), *report and recommendation adopted*, No. 2013 WL 1883247 (N.D. Fla. May 6, 2013). If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper. *Norman*, 836 F.2d at 1304.

does appear to have redundant entries that must be pruned out.  *See ACLU*, 168 F. 3d at 432 (finding that a reduction for redundant hours is warranted if the attorneys are unreasonably doing the same work).  Further, Mr. Shi appears to have spent excessive time on research, which warrants a reduction.  There are also duplicative entries with respect to a letter sent to Plaintiff's counsel and other entries for fees that are not recoverable; therefore, a reduction in those hours is also warranted.

Plaintiff suggests that many of Defendants' time entries are block billed, but the Court disagrees.  Indeed, the Court finds that many of the entries are "closely related and described in detail such that [this Court] can easily determine that the time is compensable."  *Alper Auto., Inc. v. Day to Day Imps., Inc.*, 2022 U.S. Dist. LEXIS 158310, at *14 (S.D. Fla. July 25, 2022).  Further, this Court finds the supervisory tasks performed by Ms. Walker and Mr. Goldsmith to be consistent with a partner's role, and Mr. Goldsmith's hours should not be excluded simply because they were minimal.  *See CITGO Petroleum Corp.*, 2022 WL 17718802 at *7 (allowing a partner to collect 0.15 billable hours).

But we agree that Mr. Richman often billed hours that were strikingly similar to work described by other attorneys on this case.[9] For these entries, Defendants have not satisfied their burden "of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of

---

[9]     This Court is referring specifically to the time entries at Exhibit A, ¶¶ 12, 31, 49, 54, 77, 87, 92, 97, 99, 107, 129, 131, 134, 141, 153, 158.  [D.E. 92-1].

multiple-lawyer litigation." *See ACLU*, 168 F. 3d at 432.  Thus, 33.4 hours billed by Mr. Richman are redundant and must be pruned out.

Further, many of Mr. Shi's research entries are excessive and unnecessary, especially when considering that this case was resolved on motions to dismiss.  *See Norman*, 836 F.2d at 1301 ("Excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis. In the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court.").  Therefore, this Court finds that the entries at Exhibit E, ¶¶ 1, 3, 7, 11, 14, 15, 16, 21, 23, 26, 27, 29, 30, 33 [D.E. 92-5] are excessive and shall not be awarded, for a total reduction of 34.4 hours.

Additionally, eight entries by four different lawyers on a letter to opposing counsel [D.E. 92-2] is duplicative, and thus a reduction of 6.4 hours is warranted on those specific entries.[10]  Further, time spent on clerical tasks, such as uploading docket entries, is not recoverable.  *See Pena v. Facci of Merrick Park, Inc.*, 2020 WL 13390192, at *5 (S.D. Fla. Oct. 12, 2020) (refusing to award time spent on clerical tasks such as uploading documents and preparing correspondence regarding scheduling of hearings, depositions, and mediation).  Therefore, Ms. DeLeo's entries

---

[10]    Specifically, the time entries at Exhibit B, ¶¶ 4-8 shall not be awarded.  [D.E. 92-2].

at Exhibit C [D.E. 92-3] and Mr. Arias' entry at Exhibit A, ¶ 17 [D.E. 92-1] will not be awarded, which amounts to a total reduction of 4 hours.  Lastly, because pro hac vice fees are not recoverable, time spent on pro hac vice motions is also not recoverable.  *See Exhibit Icons, LLC v. XP Cos., LLC*, 2009 U.S. Dist. LEXIS 111635, at *3 (S.D. Fla. Nov. 18, 2009) ("[T]he pro hac vice fee is an expense of counsel, not the client, and is thus not properly recoverable . . . ."); *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 2014 WL 691500, at *18 (S.D. Miss. Feb. 21, 2014) (finding that "time spent seeking admission pro hac vice is not recoverable as costs or fees."). Accordingly, the time entries listed in Exhibit D [D.E. 92-4], which total 9.2 hours, shall not be awarded.

In sum, the Court awards the following:

Mr. Goldsmith:          5.6 hours x $700.00 = $3,920.00;

Ms. Walker:             18.2 hours x $700.00 = $12,740.00;

Mr. Seibald:            72.3 hours x $700.00 = $50,610.00;

Mr. Richman:            118 hours x $500.00 = $59,000.00;

Mr. Shi:                45.7 hours x $300.00 = $13,710.00;

Mr. Arias:              0 hours x $175.00 = $0.00;

Mr. Santamaria:         5.7 hours x $175.00 = $997.50;

Ms. DeLeo:              6 hours x $175.00 = $1050.00; and

Mr. Roeder:             5 hours x $175.00 = $875.00.

Thus, the lodestar equates to a total sum of $142,902.50.

  **F.** ***The Results Obtained***

  After the lodestar is determined with the multiplication of the reasonable hourly rate times the number of hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained.  "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302 (citing *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987)).  "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Norman*, 836 F.2d at 1302.  However, exceptional results are "unusual or rare" and "an outcome that is not unexpected in the context of extant substantive law will not ordinarily be exceptional." *Id.*  Even if the results obtained were exceptional, "no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." *Id.*

  Here, the Court finds that the results obtained—dismissal with prejudice of all of Plaintiff's claims—qualify as an excellent result under the circumstances. *See Richards v. Fin. Servs. Auth.*, 2012 WL 472724, at *3 (M.D. Fla. Feb. 14, 2012) (finding that a dismissal with prejudice qualifies as an excellent result).  However, the results obtained do not reach the level of exceptional because there is no evidence in the record to show that the quality of Defendants' counsel was superior to that which one would reasonably expect in light of the rates they seek.  Therefore, no further reduction or adjustment is warranted based on the results obtained.

### G. *The Recovery of Expenses*

Defendants also seek $15,000 in legal research expenses beyond the fees due to their lawyers.  The Court finds that they are entitled to recover these expenses.

Plaintiff does not dispute Defendants' entitlement to expenses under the contract but instead states that legal research expenses are not recoverable as a cost under 28 U.S.C. § 1920.  *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("[C]osts such as . . . computerized legal research . . . are clearly nonrecoverable.").  Yet, the Court has discretion to determine whether the cost of online legal research should be recoverable when costs incurred for online legal research are considered a component of *attorney's fees* rather than strictly costs under 28 U.S.C. § 1920.  *See H.C. v. Bradshaw*, 426 F. Supp. 3d 1266, 1285 (S.D. Fla. 2019); *Trump v. Clinton*, 2023 WL 333699, at *21 (S.D. Fla. Jan. 19, 2023), *appeal dismissed*, 2023 WL 3477967 (11th Cir. Apr. 6, 2023).  Therefore, "online legal research is a reimbursable expense so long as the research cost is in fact paid by the firm to a third-party provider and is customarily charged by the firm to its clients as a separate disbursement." *Env't Mfg. Sols., LLC v. Peach State Labs, Inc.*, 274 F. Supp. 3d 1298, 1329 (M.D. Fla. 2017) (internal quotations omitted).

Here, the Court finds Defendants' electronic research expenses to be reimbursable. Gibson Dunn appears to customarily charge their clients separately for online research expenses [D.E. 89], and the Westlaw invoices in Exhibit 3 [D.E. 88-3] are all listed under the same client number (presumably, Peak One).  Therefore, because Defendants are entitled to their attorneys' fees and electronic research costs

are considered a component of attorneys' fees, Defendants are entitled to their reasonable electronic research costs.

In the parties' pre-motion conference, Plaintiff stated that if the Court found Defendants were entitled to electronic research expenses, it would not object to the amount of $15,000.  [D.E. 94-1].  Nevertheless, this Court finds the $15,000 electronic research amount to be reasonable.  *See Env't Mfg. Sols., LLC*, 274 F. Supp. 3d at 1329 (awarding $16,808.68 for online research expenses); *Trump*, 2023 WL 333699 at *21 (awarding $14,292.39 for electronic legal research).  Accordingly, Defendants' $15,000 electronic research expense is reasonable and should therefore be awarded.

### IV.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion for fees and expenses [D.E. 88] be **GRANTED in part** and **DENIED in part**. Defendants are entitled to recover $142,902.50 in fees and $15,000 in expenses, totaling $157,902.50.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.*,

*Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of July, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

25